UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>  vs.<br><br>MICHAEL A. DREYER,<br><br>          Defendant.<br>_____ | )<br>) NO.  2:12-CR-00119-MJP<br>)<br>) DEFENDANT'S MEMORANDUM<br>) SUPPORTING MOTION TO SUPPRESS<br>) EVIDENCE<br>)<br>) **NOTED: June 15, 2012**<br>)<br>) **Evidentiary Hearing Requested** |

**MEMORANDUM**

**I.      FACTS**

<u>The Federal Government's Initial Intrusion into Mr. Dreyer's Home Computer</u>

In April 2011 federal agents, including an agent from the Naval Criminal Investigative Service (NCIS) used a software tool to connect to a computer identified by internet protocol (IP) number 67.160.77.21. Once connected to the computer, the agents claim that they identified files on the computer potentially containing images of child pornography. These computer files were allegedly found in a location containing shared files on computer number 67.160.77.21. The agents described how they downloaded three shared files from the computer identified as IP number 67.160.77.21.  These three files are further described in paragraph 10.A, B., and C. of

DEFENDANT'S MEMORANDUM SUPPORTING
MOTION TO SUPPRESS EVIDENCE - 1

**KANNIN LAW FIRM P.S.**
16043 Sylvester Road Southwest
Burien, Washington 98166
Phone (206) 574-0202 - Fax (206) 574-0101
Email: paralegal@kanninlaw.com

agent Logan's report dated May 12, 2011. On April 14, 2011 a U.S. Navy employee, Stephen Logan, working for the NCIS submitted an administrative subpoena request to the FBI.[1] In his subpoena request Logan asked the FBI to send an Administrative Subpoena to Comcast Cable Company in New Jersey. The purpose of the administrative subpoena request was described as: "Suspect IP was identified in an area of large DOD and USN saturation indicating likelihood of DOD/USN suspect."[2] The FBI complied with Logan's request and served subpoena number 00034034 on the Comcast Cable Company, Cherry Hill, New Jersey, in the matter of case number 305A-HQ-C1411872-F. The subpoena commanded Comcast to provide the FBI with the customer or subscriber name and customer or subscriber address for IP number 67.160.77.21 for the period starting on April 13, 2011 and ending on April 21, 2011.[3] Comcast responded on April 29, 2011 by informing the FBI that the IP number 67.160.77.21 subscriber's name was Michael Dreyer and that his address was ▓▓▓▓▓▓▓▓▓▓ in Algona, Washington.[4]

On April 29, 2011 Logan reports that he searched through various government computer data bases and determined that Dreyer was a retired U.S. Air Force (USAF) technical sergeant, married to Lourdes Dreyer and residing at ▓▓▓▓▓▓▓▓▓▓ in Algona, Washington.[5] On May 12, 2011 Logan reported that a further background check returned no derogatory information associated with Dreyer.[6] On May 25, 2011 Detective James Schrimpsher with the Algona Police Department reports that he spoke with Naval Criminal Investigative Services (NCIS) Agent Rachel Clergy by telephone. She informed Schrimpsher that Michael Dreyer was a suspect in a criminal child pornography investigation.

---

[1] Discovery at 000156
[2] Id.
[3] Discovery at 000161
[4] Id.
[5] Discovery at 000168-169
[6] Discovery at 000168

DEFENDANT'S MEMORANDUM SUPPORTING
MOTION TO SUPPRESS EVIDENCE - 2

**KANNIN LAW FIRM P.S.**
16043 Sylvester Road Southwest
Burien, Washington 98166
Phone (206) 574-0202 - Fax (206) 574-0101
Email: paralegal@kanninlaw.com

Algona Police Department's Search of Mr. Dreyer's Home

In response to Clergy's call the detective went to the Algona City Hall and verified that Michael Dreyer lived at ▬▬▬▬▬ in Algona.[7] On June 20, 2011 Detective Schrimpsher reports that he received Logan's report but did not view any images or look at any computers. Detective Schrimpsher said that he determined that the files Logan claimed to have taken off of Dreyer's computer were child pornography. Based upon Logan's report, Schrimpsher concluded Dreyer may be violating Washington State law.[8]

On July 5, 2011 Schrimpsher prepared an affidavit for a search warrant. On the first page of the fourteen (14) page affidavit the detective alleged that he thought evidence of Dreyer's crimes of possession and dealing in depictions of minor engaged in sexually explicit conduct would be found at Dreyer's house.[9] RCW 9.68A.070 and RCW 9.68A.050 were the Washington state laws cited in the affidavit. The remainder of page one through the middle of page seven (7) contain boiler plate representations that are typical in search warrants and are not specific to Dreyer or the government's case against him. Beginning at the bottom half of page seven (7) and continuing on all through page eight (8) are the only facts of the investigation related to the government's case against Dreyer that Detective Schrimpsher included in his affidavit. These facts are insufficient.

On July 5, 2011, Detective Schrimpsher presented his flawed Affidavit for Search Warrant to King County District Court Judge Corinna Harn.[10] According to Detective Schrimpsher, "Since all the arrangements were made I scheduled time with a judge to have [the] [sic] warrant reviewed and approved. On July 5, 2011 I had the warrant signed and approved by a King

---

[7] Discovery at 000033
[8] Discovery at 000036
[9] Discovery at 000135-148
[10] Id.

DEFENDANT'S MEMORANDUM SUPPORTING
MOTION TO SUPPRESS EVIDENCE - 3

KANNIN LAW FIRM P.S.
16043 Sylvester Road Southwest
Burien, Washington 98166
Phone (206) 574-0202 - Fax (206) 574-0101
Email: paralegal@kanninlaw.com

County Judge."[11] Judge Harn confirms that Detective Schrimpsher gave her the affidavit and warrant at 1:45 p.m. on July 5, 2011.[12] At the same time, 1:45 p.m. on July 5, 2011, Judge Harn signed the search warrant commanding any peace officer in the State of Washington to enter the residential home at ▮▮▮▮▮▮▮▮ in Algona, search the home and seize all of the computers in the home.[13] In his affidavit, Detective Schrimpsher alleges that he concluded that the files on Dreyer's computer were child pornography based on Logan's report, and writes, "For further details on Agent Logan's investigation please see Addendum A which is a complete copy of SA Logan's completed report and is attached to the affidavit."[14] Notably, there is nothing in Detective Schrimpsher's affidavit that details or describes the purported child pornography. Proof that Agent Logan's completed report was presented to Judge Harn on July 5 is missing along with confirmation that it was received into the files of the King County District Court on July 5. The only proof present shows that the affidavit was filed on July 7, 2011, the day after the search, and two days after the warrant was issued.[15] Regardless of when the affidavit was filed, there is no proof that Judge Harn read Logan's completed report or relied upon it in any way.[16] Thus, there is no proof that facts showing sexually explicit conduct involving minors were ever presented to the court. Additionally, there are no facts in the warrant showing that Dreyer caused files containing child pornography to be sent to anyone else.

Detective Schrimpsher reports that the warrant was executed on July 6, 2011 at approximately 9:15 a.m. Six (6) police officers arrived at the Dreyer residence at ▮▮▮▮▮▮▮▮ in Algona. Detective Schrimpsher, Detective Newton, Sergeant Gaskill, and Officer Job of the Algona Police Department along with Detective Polhemus and Detective Luckie of the Seattle

---

[11] Discovery at 000039
[12] Discovery at 000148
[13] Discovery at 000184-86
[14] Discovery at 000142
[15] Discovery at 000135
[16] Discovery at 000135-148

DEFENDANT'S MEMORANDUM SUPPORTING
MOTION TO SUPPRESS EVIDENCE - 4

Police Department showed up to search Dreyer's house and his computer. Upon arriving at the Dreyer residence the officers knocked on the front door. Mrs. Dreyer answered the door and the police officers went inside. In response to the officers' questions, Mrs. Dreyer told the officers that her husband was not home, and that he was working at a food bank in Kent.[17] Detective Schrimpsher, Detective Polhemus, and Sergeant Gaskill left the Dreyer home in Algona and drove to the food bank in Kent. Upon arriving, the officers went inside and found Dreyer. Detective Schrimpsher told Dreyer that the police officers wanted to talk to him and took Dreyer outside. Once outside Dreyer told Detective Schrimpsher that he did not wish to speak with him. In response, the police officers arrested Dreyer and put him inside of their police SUV. Dreyer was not free to leave.[18] Once Dreyer was confined inside of the police SUV Detective Schrimpsher began questioning Dreyer. Dreyer again told Schrimpsher he did not want to answer questions.[19] The detective told Dreyer that he was taking Dreyer to his house. Dreyer asked if he could drive his car home. The officers refused and told Dreyer to go back inside the food bank and find someone else to drive his car home. The police officers searched Dreyer's vehicle before letting a fellow food bank volunteer take the car back to the Dreyer home. Dreyer did not consent to this search. As the police officers searched Dreyer's car, they kept Dreyer confined inside the police SUV parked in front of the food bank. Algona Police Officer Job admits that the Algona officers took Mr. Dreyer into custody during their investigation.[20] When Dreyer was confined in the police SUV the officers continued to question him even after he had told him he did not want to answer questions.[21] Dreyer told the officers multiple times that he did

---

[17] Discovery at 000042
[18] Id.
[19] Discovery at 000213-214
[20] Discovery at 000034
[21] Discovery at 000213-214

DEFENDANT'S MEMORANDUM SUPPORTING
MOTION TO SUPPRESS EVIDENCE - 5

**KANNIN LAW FIRM P.S.**
16043 Sylvester Road Southwest
Burien, Washington 98166
Phone (206) 574-0202 - Fax (206) 574-0101
Email: paralegal@kanninlaw.com

not want to answer questions.[22] He was kept in police custody from the time he was taken out of the food bank until he would be booked into the King County Jail. After the officers took Dreyer and left the food bank they took an indirect route in order to "take Mr. Dreyer home," that took around forty-five (45) minutes and continued to question Dreyer during this time. A direct route takes about fifteen minutes. After they arrested Dreyer at the food bank none of the police officers gave Dreyer the *Miranda* warnings before questioning him. Upon arriving at Dreyer's home the police officers kept Dreyer confined in the SUV and continued questioning him as they searched inside of the house. Dreyer continued to tell the officers that he did not want to answer their questions. From the time the police officers arrested Dreyer at the food bank until Officer Job drove Dreyer to the King County Jail and booked him into the jail, one or more police officers stood guard over Dreyer at all times. Eventually, Dreyer told the officers that if there was child pornography on the computer inside the house Dreyer thought it had all been deleted.[23] The police officers kept Dreyer confined inside of a police vehicle for the entire length of the search. After completing their search at the Dreyer residence the officers left with the computers and other property they had seized from the house. Officer Job booked Mr. Dreyer into the King County Jail.

On December 1, 2011 United States Department of Homeland Security Agent Dan Hyunh appeared in the Federal District Court and presented an application and affidavit for a search warrant to the Court.[24] The affidavit repeated the same statements from Detective Shrimpsher's affidavit presented in the King County District Court in July 2011. The federal agent's affidavit relied almost exclusively upon evidence previously seized on July 6, 2011 as justification for the December 1, 2011 search warrant. Additionally the Agent Hyunh selectively used Detective

---

[22] Discovery at 000213-215
[23] Discovery at 000228
[24] Discovery at 000101-120

DEFENDANT'S MEMORANDUM SUPPORTING
MOTION TO SUPPRESS EVIDENCE - 6

Schrimpsher's report and the transcript of the police interrogation to introduce evidence in his affidavit. Hyunh also left out information that would have been useful to the judge in determining if there was probable cause to issue another search warrant. The Homeland Security agent left the Federal District Court with a signed search warrant.[25] The December 1, 2011 warrant was completely tainted by the prior illegal acts that occurred on July 6, 2011 when the police arrested Dreyer before searching his house.

The United States obtained an indictment against Dreyer and on May 3, 2012 charged him with one count of knowingly distributing child pornography in violation of Title 18 U.S.C. § 2252(a)(2), and (b)(1) and one count of unlawfully possessing child pornography in violation of Title 18 U.S.C. § 2252(a)(4)(B) and (b)(2).

**A. The Administrative Subpoena Used to Obtain Information About Dreyer Was Not Issued in Accordance With 18 U.S.C. § 3486**.

18 U.S.C. § 3486 authorizes the attorney general to issue an administrative subpoena to compel an electronic communication service provider to disclose the name, address and telephone number of its subscribers.[26] This disclosure is allowed when a federal police officer is investigating a federal offense involving the sexual exploitation or abuse of children. In our case there is insufficient proof that the government complied with the statute's requirements when it (1) requested an administrative subpoena and (2) served an administrative subpoena on Comcast. The stated reason for the administrative subpoena was described as "Suspect IP was identified in an area of large DOD and USN saturation indicating likelihood of DOD/USN suspect."[27] There are no facts showing that the person requesting the subpoena has determined that a federal law has been violated and there are no facts showing that the information

---

[25] Discovery at 000101-120

[26] 18 U.S.C. § 3486 : US Code - Section 3486

[27] Discovery at 000156

DEFENDANT'S MEMORANDUM SUPPORTING
MOTION TO SUPPRESS EVIDENCE - 7

KANNIN LAW FIRM P.S.
16043 Sylvester Road Southwest
Burien, Washington 98166
Phone (206) 574-0202 - Fax (206) 574-0101
Email: paralegal@kanninlaw.com

requested is necessary to protect an exploited child or that it is necessary to stop a suspected incident of child abuse. Given that Congress appears to have intended for law enforcement to use the 18 U.S.C. § 3486 statutory scheme in place of the Fourth Amendment for certain specific types of evidence, law enforcement should have to comply with the statute in order to collect evidence without a search warrant. Since neither the NCIS nor the FBI complied with the 18 U.S.C. § 3486 statutory scheme, they are not entitled to collect evidence from Comcast without a warrant.  Thus, the subpoena should be quashed. In this case, a warrant would be necessary or a subpoena executed in accordance with 18 U.S.C. § 3486. Because the police did not have a warrant or a legally effective subpoena, the search and compelled production of Mr. Dreyer's Comcast records was unlawful. Any evidence collected should be suppressed as fruits of the poisonous tree.

**B. The Warrant Affidavit Containing Only Conclusory Statements was Substanitally Flawed, Invalidating the Search Warrant. Therefore, any Evidence Obtained as a Result of the Unlawful Warrant Should be Suppressed.**

Detective Schrimpsher's warrant affidavit fails to establish probable cause because it summarily states that an unknown person determined that the images on Dreyer's computer were child pornography. Algona Police Department Detective Schrimpsher created the affidavit to obtain a search warrant authorizing him to search Dreyer's computer and home.  The Detective's conclusory statement that an individual who did not appear in court and did not submit an affidavit determined that  Mr. Dreyer's computer had child pornography on it,  cannot, on its own, satisfy the Fourth Amendment.

The conclusory statements Detective Schrimpsher relied upon described the titles of at least three (3) computer files allegedly on Mr. Dreyer's computer. These titles cannot establish probable cause to believe that the files actually contain images of child pornography. There is no

DEFENDANT'S MEMORANDUM SUPPORTING
MOTION TO SUPPRESS EVIDENCE - 8

KANNIN LAW FIRM P.S.
16043 Sylvester Road Southwest
Burien, Washington 98166
Phone (206) 574-0202 - Fax (206) 574-0101
Email: paralegal@kanninlaw.com

information in the warrant to establish that the files obtained through the use of peer-to-peer software actually correspond to the contents of the file or that these files were on Dreyer's computer when the police applied for a search warrant on July 5, 2011. Fifty years ago the Supreme Court explained that "[t]he point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of officer engaged in the often competitive enterprise of ferreting out crime," but that it ensures the searching police officers follow the law in gathering evidence to be used against the people the officers say are breaking the law.  *Johnson v. United States*, 333 U.S. 10, 12-14,(1948). To make sure that admonition continued to remain true, 26 years ago in *Illinois v. Gates* the Supreme Court made clear that a police officer's sworn statement that " 'he has cause to suspect and does believe' that liquor illegally brought into the United States is located on certain premises will not do" or that an officer's statement that "'affiants have received reliable information from a credible person and do believe' that heroin is stored in a home, is likewise inadequate" to establish probable cause. *Illinois v. Gates*, 462 U.S. 230, 238 (1983).  Both of the examples above involved "a mere conclusory statement that g[ave] the magistrate virtually no basis at all for making a judgment regarding probable cause. Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others. In order to ensure that such an abdication of the magistrate's duty does not occur, courts must continue to conscientiously review the sufficiency of affidavits on which warrants are issued." *Id.*  The requirement that a warrant must be specific is further articulated in *New York v. P.J. Video, Inc.*, 475 U.S. 868, 874 (1986). In *New York*, the Supreme Court states that "[W]e have never held that a magistrate must personally view allegedly obscene films prior to issuing a warrant authorizing their seizure. On the contrary, we think that a reasonably specific

DEFENDANT'S MEMORANDUM SUPPORTING  
MOTION TO SUPPRESS EVIDENCE - 9

KANNIN LAW FIRM P.S.  
16043 Sylvester Road Southwest  
Burien, Washington 98166  
Phone (206) 574-0202 - Fax (206) 574-0101  
Email: paralegal@kanninlaw.com

affidavit describing the content of a film generally provides an adequate basis for the magistrate to determine whether there is probable cause to believe that the film is obscene, and whether a warrant authorizing the seizure of the film should issue." *New York v. P.J. Video, Inc.*, 475 U.S. 868, 874 (1986). The warrant signed by King County District Court Judge Harn did not adequately describe the contents of the computer files and it failed to state whether the files on Dreyer's computer specifically matched the files downloaded by the government agent. In this case, the judge's action appears to have been a mere ratification of the bare conclusions that NCIS Agent Logan gave to Schrimpsher. Moreover, since the detective's affidavit involved "a mere conclusory statement," the judge had virtually no basis at all for making a judgment regarding probable cause. In order to ensure that such an abdication of the magistrate's duty does not occur, courts must continue to conscientiously review the sufficiency of affidavits on which warrants are issued. Because Detective Schrimpsher's warrant affidavit rested solely upon the conclusions of other individuals not sworn before Judge Harn, the July 5, 2011 warrant was unlawful. Any subsequent searches made pursuant to the unlawful warrant were further unlawful acts. Therefore, any evidence collected pursuant to the unlawful searches should be suppressed as fruits of the poisonous tree. *Wong Sun v. United States*, 371 U.S. 471 (1963).

**C. Detective Schrimpsher Did Not Have Probable Cause to Arrest Dreyer; Thus, He was Illegally Seized and Any Evidence Obtained as a Result Should be Suppressed as Fruit of the Poisonous Tree.**

Law enforcement officials *must* possess a warrant, supported by probable cause, before effectuating an arrest. *Maryland v. Dyson*, 527 U.S. 465 (1999); *Andrews v. Fuoss*, 417 F.3d 813 (8th Cir. 2005). The right to be free from an arrest without probable cause is clearly established under the Fourth Amendment. *Malley v. Briggs*, 475 U.S. 335 (1986); *McKenzie v. Lamb*, 738 F.d 10005 (9th Circ. 1984). Probable cause exists when "under the totality of circumstances

DEFENDANT'S MEMORANDUM SUPPORTING
MOTION TO SUPPRESS EVIDENCE - 10

KANNIN LAW FIRM P.S.
16043 Sylvester Road Southwest
Burien, Washington 98166
Phone (206) 574-0202 - Fax (206) 574-0101
Email: paralegal@kanninlaw.com

known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the defendant] had committed a crime." *United States v. Smith*, 790 F.2d 789, 792 (9th Circ. 1986); *Orin v. Barclay*, 272 F.3d 1207, 1218 (9th Circ. 2001) (quoting *Beck v. Ohio*, 379 U.S. 89, 91, 95 S.Ct. 223, 13 L.d.2d 142 (1964). In Washington State, an officer must either personally see a defendant commit a crime or have probable cause to believe the defendant committed a felony before arresting the defendant without a warrant. RCW 10.31.100.

In the present case, the arresting officers did not have a warrant to arrest Dreyer. Consequently, in order to have effectuated a lawful arrest, the officers must have had probable cause to believe that Dreyer had or was committing a felony or committing a misdemeanor crime either in front of the officers or one of the misdemeanors enumerated in RCW 10.31.100.  The officers did not have probable cause to believe that Dreyer was committing any crime when they arrested him and therefore the arrest violated his Fourth Amendment rights. Any evidence collected as a result of this illegal arrest should be suppressed.

Dreyer was also impermissibly seized. The Fourth Amendment of the United States Constitution requires that searches and seizures be reasonable. A search or seizure is ordinarily unreasonable in the absence of individualized suspicion of wrongdoing. *Chandler v. Miller,* 520 U.S. 305, 308 (1997).   Under both the United States and Washington State constitutions, warrantless searches and seizures are presumptively unreasonable unless they fall into one or more of the narrowly drawn exceptions to the warrant requirement. *State v. Ross,* 141 Wn.2d 304 (2000).  Unless it can be shown that the warrantless seizure falls under a recognized exception to the warrant requirement, evidence gathered during the seizure should be suppressed. *United States v. Calandra,* 428 U.S. 465 (1976). A seizure occurs "whenever a police officer accosts an individual and restrains his freedom to walk away." *Terry v. Ohio*, 392 U.S. 1 (1968).

DEFENDANT'S MEMORANDUM SUPPORTING
MOTION TO SUPPRESS EVIDENCE - 11

**KANNIN LAW FIRM P.S.**
16043 Sylvester Road Southwest
Burien, Washington 98166
Phone (206) 574-0202 - Fax (206) 574-0101
Email: paralegal@kanninlaw.com

In this case, an officer of the Algona police department seized Dreyer on July 6, 2011 when they approached him while he was working at a food bank. Detective Schrimpsher refused to let Dreyer drive his own vehicle back to his house. The detective also informed Dreyer that they had a search warrant and were searching his house for child pornography. Next, the police loaded Dreyer into a police vehicle with two officers, one of whom was fully uniformed.[28] The officers kept Dreyer confined in the police vehicle and took Dreyer from Kent to Algona. At this point, Dreyer was obviously not reasonably free to leave and was illegally seized. The seizure also fails to fall under one of the limited exceptions to the warrant requirement. Therefore, any and all evidence obtained as a result of this unlawful seizure should be suppressed.

Dated this 31st day of May, 2012.

**KANNIN LAW FIRM, P.S.**

_s/John Kannin_____
John Kannin, WSBA # 27315
Attorney for Defendant

---

[28] Discovery at 000042

DEFENDANT'S MEMORANDUM SUPPORTING
MOTION TO SUPPRESS EVIDENCE - 12

KANNIN LAW FIRM P.S.
16043 Sylvester Road Southwest
Burien, Washington 98166
Phone (206) 574-0202 - Fax (206) 574-0101
Email: paralegal@kanninlaw.com