UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>MICHAEL ALLAN DREYER,<br><br>　　　　　Defendant. | CASE NO. CR12-119-MJP<br><br>ORDER GRANTING MOTION FOR NEW TRIAL |

THIS MATTER comes before the Court on Defendant's Motion to Vacate Conviction and for a New Trial. (Dkt. No. 158.) Having considered the Parties' briefing and oral arguments, and having held an evidentiary hearing on the issues presented that included testimony from witnesses Judge Corinna Harn, Charles Sergis, and Leeanna Young, the Court hereby GRANTS the Motion.

**Procedural History**

Defendant Michael Dreyer moves to vacate his convictions for possession and distribution of child pornography pursuant to Fed. R. Crim. P. 33 based on violations by the prosecution of the duties imposed by Brady v. Maryland, 373 U.S. 83 (1963), and its progeny.

ORDER GRANTING MOTION FOR NEW TRIAL- 1

(Dkt. No. 158.) Defendant argues that the government failed to disclose over 1,600 pages of impeachment material about Detective James Schrimpsher, the police officer whose affidavit supported the search warrant used to seize all of the evidence against Mr. Dreyer. Defendant argues that had the Court known about Schrimpsher's pattern of deception and serious misconduct, as illustrated by the undisclosed impeachment material, it would not have credited his uncorroborated testimony at the 2012 Franks v. Delaware, 438 U.S. 154 (1978), hearing. (Dkt. Nos. 34, 43.)

Mr. Dreyer's direct appeal of his criminal conviction is currently pending in the Ninth Circuit. In September 2014, a panel of the Ninth Circuit concluded that Mr. Dreyer's conviction should be vacated because the evidence against Mr. Dreyer should have been suppressed because the government's investigation violated the Posse Comitatus Act. (Dkt. No. 147.) The Ninth Circuit, sitting en banc, then reversed the panel's decision, affirming this Court's denial of Mr. Dreyer's motion to suppress because although the government had violated the Posse Comitatus Act, suppression was not warranted in this instance. (Dkt. No. 169.) The en banc Ninth Circuit remanded the matter to the panel for consideration of the remaining issues presented in Mr. Dreyer's appeal. (Id.)

Before the Ninth Circuit's en banc decision was handed down, Mr. Dreyer filed in this Court a motion to vacate his conviction and for a new trial based on alleged Brady violations by the prosecution. (Dkt. No. 158.) Because Mr. Dreyer's direct appeal was still pending, Mr. Dreyer requested an indicative ruling—an order indicating to the Court of Appeals that this Court would grant the motion if it had authority to do so, or that this Court finds that the motion raises a substantial issue. (Id.)

1       After considering the Parties' briefing and hearing oral argument, this Court granted Mr.
2 Dreyer's request for an indicative ruling, finding that the Motion for a New Trial raised
3 substantial issues warranting further consideration. (Dkt. No. 181.) In that Order, the Court
4 concluded that evidence had been inadvertently suppressed by the government in violation of its
5 obligations to learn of and disclose evidence affecting its witnesses' credibility, and that the
6 suppressed evidence was favorable to the defense because it conflicted with testimony provided
7 at the initial <u>Franks</u> hearing and established a pattern of serious intentional misconduct that went
8 far beyond the picture painted at the hearing. (<u>Id.</u> at 3-5.) The Court concluded that Mr.
9 Dreyer's Motion turned on the issue of materiality, essentially asking whether there is a
10 "reasonable probability" that the Court would have found the warrant invalid after the <u>Franks</u>
11 hearing because, based on newly presented impeachment evidence, the Court would not have
12 credited Detective Schrimpsher's testimony and would have found the remaining materials
13 insufficient to establish probable cause for the search that resulted in Mr. Dreyer's prosecution.
14 (<u>Id.</u>) The findings and conclusions now made here build on those already made by the Court in
15 its indicative ruling.

16       Based on this Court's indicative ruling, the Ninth Circuit granted Mr. Dreyer's motion for
17 a limited remand, to which the government did not respond, thereby returning jurisdiction to this
18 Court for the purpose of resolving Mr. Dreyer's Motion to Vacate Judgment and for a New Trial.
19 (Dkt. No. 182.) Following remand to this Court, the Parties conducted additional discovery, and
20 the Court held an evidentiary hearing on May 6, 2016. (Dkt. No. 197.) The Court now
21 concludes that Mr. Dreyer's Motion for a New Trial must be granted.

ORDER GRANTING MOTION FOR NEW TRIAL- 3

**Findings of Fact**

1. Prior to the initial <u>Franks</u> hearing, the assigned Assistant United States Attorneys ("AUSAs") learned that Detective Schrimpsher's employment with the King County Sherriff's Office ("KCSO") had been terminated under the KCSO's dishonesty policy. Pursuant to their obligation to learn of and disclose impeachment evidence, the prosecution wrote to the KCSO to request "anything they may have" on Detective Schrimpsher. (Dkt. No. 164-1 at 3, 10.) The prosecution also wrote to the defense, informing the defense that a request was submitted to the KCSO for "any materials they may have." (<u>Id.</u> at 11.) No impeachment materials were received prior to the first day of the <u>Franks</u> hearing.

2. After the first day of the <u>Franks</u> hearing but before the second day, the prosecution contacted the legal advisor at the KCSO because it had not received a response to its request. The legal advisor confirmed that Schrimpsher's termination involved a finding of dishonesty, and the AUSA "requested a copy of the letter informing Schrimpsher of his termination from KCSO and a copy of the arbitrator's decision." (Dkt. No. 164-1 at 4.) The prosecution also contacted the King County Prosecutor's Office and the Algona Police Department in an effort to locate these materials. (<u>Id.</u>) The prosecution wrote to the defense again, indicating that they had contacted both the King County Sherriff's Office <u>and</u> the King County Prosecutor's Office, as well as other agencies, asking for any impeachment material they might have about Schrimpsher's violation of the King County Sherriff's Office's dishonesty policy. (Dkt. No. 158-5.)

3. Prior to the second day of the <u>Franks</u> hearing, the defense received from the AUSAs a copy of a two-page memorandum titled "Loudermill Hearing Results" and a 41-page

1  document titled "Arbitrator's Decision and Award." (Dkt. Nos. 160-1, 160-9.) Nothing further
2  was provided to the defense prior to the second day of the Franks hearing.

3      4.    On June 22, 2012, the first day of the Franks hearing, Schrimpsher testified on
4  direct examination that the judge reviewing the warrant application asked a single question about
5  his affidavit concerning the meaning of the term SHA value. (Dkt. No. 158-4 at 63-64.) He also
6  testified that the court clerk made a copy of the warrant after it had been signed by the judge.
7  (Id. at 64.)

8      5.    On cross-examination, Schrimpsher first testified that everything in the affidavit
9  he used to secure the warrant was true and correct. (Id. at 83.) Schrimpsher testified that once
10 the issuing judge had reviewed the warrant application, Schrimpsher swore to the court that
11 everything was true and correct. (Id. at 87-88.)

12     6.    On cross-examination, Schrimpsher testified that he explained to the issuing judge
13 the circumstances of how he received the case, and explained that he was relying on information
14 he received from experts. (Id. at 98.)

15     7.    Later during his cross-examination, Schrimpsher testified that the issuing judge
16 asked him questions about both the warrant and the addendum, which was the Naval Criminal
17 Investigative Service ("NCIS") investigation report. (Id. at 116.)

18     8.    During the course of the examination, Schrimpsher's testimony changed from
19 claiming that the affidavit was true and correct to admitting that everything in the affidavit
20 except the material on pages seven and eight of the affidavit was not from his personal
21 knowledge and/or was not correct.

9. Similarly, Schrimpsher's testimony that the reviewing judge had asked a single question about SHA values changed over the course of the examination, with Schrimpsher concluding that the judge asked multiple questions about the affidavit and the attachment.

10. The reviewing judge testified that if there are assertions in a warrant affidavit that she determined are untrue, her practice is to mark any changes to the facts asserted on the face of the affidavit itself, or to reject the warrant application in its entirety. The reviewing judge testified that she would not allow a police officer to swear to untrue statements.

11. The reviewing judge's practice is to direct police officers to have a copy of the warrant and affidavit made after the warrant is signed, and to file the original with the clerk of court's office.

12. There is no record in the clerk of court's office that this procedure was followed on the day the warrant was issued. The log books for 2011 are missing from the court's records.

13. Charles Sergis, a King County deputy prosecuting attorney, could not verify that he was presented with the NCIS report as an addendum to review along with Schrimpsher's affidavit. Sergis took no steps to verify that Schrimpsher knew about what he claimed to know about in the affidavit. Sergis testified that he recognized much of what is in Schrimpsher's affidavit as "boilerplate," but Sergis did not know its source.

14. After Mr. Dreyer's trial and sentencing, a newspaper ran a story concerning the Simmons case, another criminal case that relied on Schrimpsher's testimony, which referenced potential impeachment material. The newspaper story also referenced potential impeachment information regarding Schrimpsher's work for a Missouri police department.

15. In response to a public records request made of the King County Sherriff's Office and the King County Prosecutor's Office by Mr. Dreyer's counsel, a large volume of materials

1  was produced that revealed multiple instances of Schrimpsher skirting policies, failing to detail
2  events in written reports, and remembering facts later to support his position when challenged.
3  This type of conduct occurred repeatedly, and Schrimpsher was shown to either ignore or
4  minimize his responsibility for any misconduct.

5      16.    The records received in response to the public records request included
6  information about the Simmons case, information about Schrimpsher's involvement in that case,
7  and information about the prosecution's decision to dismiss the charges against Mr. Simmons in
8  the interest of justice.

9      17.    The undisclosed material demonstrates a pattern of conduct across time, duties,
10 and multiple police units. Detective Schrimpsher's dishonesty, both through omission and
11 through false statements, was demonstrated repeatedly.

**Standard of Review**

13     To prevail on a motion for a new trial premised on a <u>Brady</u> violation, a defendant must
14 demonstrate three things. First, the suppressed evidence must be favorable to the accused.
15 <u>United States v. Jernigan</u>, 492 F.3d 1050, 1053 (9th Cir. 2007). Second, the evidence must have
16 been suppressed by the government, willfully or inadvertently. <u>Id.</u> Third, the suppressed
17 evidence must be material to the guilt or innocence of the defendant. <u>Id.</u>

18     "The touchstone of materiality review is whether admission of the suppressed evidence
19 would have created a 'reasonable probability of a different result.'" <u>Id.</u> (citing <u>Kyles v. Whitley</u>,
20 514 U.S. 419, 434 (1995)). A defendant need not show that she "would more likely than not
21 have received a different verdict with the evidence." <u>Id.</u> at 1054. Instead, she must show only
22 that the government's evidentiary suppression "undermines confidence in the outcome of the
23 trial." <u>Id.</u> In other words, evidence is material when it "could reasonably be taken to put the
24

whole case in such a different light as to undermine confidence in the verdict." <u>Kyles</u>, 514 U.S. at 435.

"For purposes of <u>Brady</u>, materiality is measured 'in terms of suppressed evidence considered collectively, not item by item.' That is, the reviewing court should assess the 'cumulative effect' of the suppressed evidence." <u>United States v. Blanco</u>, 392 F.3d 382, 387 (9th Cir. 2004) (quoting <u>Kyles</u>, 514 U.S. at 421, 436). "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." <u>Strickler v. Greene</u>, 527 U.S. 263, 289-90 (1999) (quoting <u>Kyles</u>, 514 U.S. at 434).

**Conclusions of Law**

1. This Court has jurisdiction to resolve Defendant's Motion to Vacate Judgment and for a New Trial based on the limited remand from the Ninth Circuit Court of Appeals. (Dkt. No. 182.)

2. The undisclosed impeachment evidence is material because admission of the evidence creates a reasonable probability of a different result. The undisclosed evidence, had it been revealed prior to the <u>Franks</u> hearing, would have led this Court to make the following findings:

   a) Detective Schrimpsher did not explain to the warrant-issuing court that his affidavit was not true or that it contained information and expertise that he did not posses.

   b) The warrant would not have issued had the untruths been revealed, and instead the application would have been rejected or further information would have been called for before a finding of probable cause could have been made.

1  c) The documented pattern of deceit over time revealed by Schrimpsher's history of
2 dishonesty would have called for more scrutiny of the detective's testimony during the hearing.
3  d) The testimony by the reviewing prosecutor, Charles Sergis, would have revealed a
4 lack of knowledge and understanding of what an affiant, when standing in the shoes of a
5 deponent, must possess.
6  e) It cannot be established with clarity exactly what was presented to the warrant-
7 issuing judge because the court's records are missing or protocols were not followed.
8  3. The suppressed evidence is favorable to the defense, and is not cumulative of the
9 material produced during the initial Franks hearing. Unlike the material presented during the
10 Franks hearing, the undisclosed impeachment evidence demonstrates a pattern or tendency by
11 Schrimpsher to lie when he is caught or otherwise confronted about misconduct, in an attempt to
12 cover up for or justify his misbehavior.
13  4. The evidence was inadvertently suppressed by the government. It is a fair reading
14 of the government's communications to defense counsel that what impeachment material was
15 available was turned over. The King County Prosecutor's Office's file, had it been requested,
16 would have revealed information regarding the Simmons case, and the other documents
17 produced in response to the public records request would have demonstrated the scope and
18 frequency of the problems. The AUSAs failed to probe for more and failed to check that all
19 agencies queried had responded, despite the prosecution's duty to "learn of any exculpatory
20 evidence known to others acting on the government's behalf." Carriger v. Stewart, 132 F.3d
21 463, 479-80 (9th Cir. 1997) (en banc). While defense counsel did not request a continuance of
22 the initial Franks hearing in response to the original impeachment material, the prosecution also
23 failed to request a continuance. If the government thought, upon review of the initial materials,
24

ORDER GRANTING MOTION FOR NEW TRIAL-
9

1  that it did not possess all the relevant available impeachment material, it should have requested a
2  continuance in order to comply with its constitutional duties.
3      5.      The suppressed evidence goes directly to whether a constitutional warrant issued.
4  Without the warrant, the key evidence in the case against Mr. Dreyer would not have been
5  seized.

## Conclusion

Admission of the inadvertently suppressed evidence would have led to a different result at the 2012 <u>Franks</u> hearing. Accordingly, Defendant's Motion to Vacate Conviction and for a New Trial (Dkt No. 158) is GRANTED.

The clerk is ordered to provide copies of this order to all counsel.

Dated this 9th day of June, 2016.

_____
Marsha J. Pechman
United States District Judge

ORDER GRANTING MOTION FOR NEW TRIAL-
10